# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>  v.<br><br>CODY ARRIO SEVERANCE,<br><br>    Defendant. | Case No. 3:25-cr-00006-SLG-MMS |

## ORDER ON MOTION TO SUPPRESS

Before the Court at Docket 53 is Defendant Cody Arrio Severance's Motion to Suppress. The Government responded in opposition at Docket 65. The Court conducted an evidentiary hearing on February 9, 2026. At the hearing, the Court granted each party the opportunity to provide supplemental briefing on the applicability of two cases: *United States v. Patane*, 542 U.S. 630 (2004) and *United States v. Mora-Alcaraz*, 986 F.3d 1151 (9th Cir. 2021). Defendant filed a Supplemental Brief at Docket 74, and the Government filed a Supplemental Brief at Docket 75.

## BACKGROUND

The relevant facts in this case are largely undisputed. On December 31, 2024, Magistrate Judge Matthew M. Scoble issued a search warrant for 816 and

824 Irwin Street in Anchorage, Alaska.[1] The search warrant, in Attachment A, authorized, in part, the search of "[a]ll rooms, attics, basements, and other parts therein."[2] The search warrant, in Attachment B, authorized the seizure of all evidence of violation of 18 U.S.C. § 922(g)(1), (o) and 21 U.S.C. § 841, to include "[f]irearms, firearms accessories, firearms components, and ammunition."[3] The search warrant was supported by the affidavit of Special Agent Jason Crump with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").[4] The affidavit described that Agent Crump had learned that Sergio Severance had two gun safes inside the residence, had been in possession of firearms, and had been involved in the distribution of drugs.[5]

On January 8, 2025, ATF searched 816 Irwin Street and 824 Irwin Street. Agents discovered eight individuals in the residence, including Defendant, who was found in the basement.[6] Agents detained Defendant and Officer Ryan Piscoya questioned Defendant.[7] Early in the questioning, Officer Piscoya advised

---

[1] *See* Docket 66-1 (SEALED) at 1.

[2] Docket 66-1 (SEALED) at 5.

[3] Docket 66-1 (SEALED) at 6.

[4] Docket 66-1 (SEALED) at 11-36.

[5] Docket 66-1 (SEALED) at 27-28.

[6] Docket 65-2 at 1.

[7] Docket 53 at 2-8; Docket 65 at 3-4.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 2 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 2 of 16

Defendant of his *Miranda* rights.[8] At one point during questioning, Defendant invoked his right to remain silent and the questioning ended.[9] Defendant was then placed in an Anchorage Police Department patrol car.[10]

When executing the search warrant, agents searched two rooms located in the basement. In one room, agents found a black backpack that contained a semiautomatic pistol, Defendant's Alaska identification card, debit card, wallet, and a digital scale.[11] In the second room, agents found a gun safe.[12]

After the agency discovered the gun safe, Agent Crump and Agent Ziesemer both separately approached Defendant while he was still detained in the patrol car.[13] Agent Crump first approached Defendant and asked for the combination to the safe.[14] After Defendant provided a combination and instructions to open the safe, Agent Crump said "I'm gonna, just to let you know, talk to you here shortly and then we will see about getting you out of here, what we are going to do. Alright?"[15] After being unable to open the safe, Agent Ziesemer then approached

---

[8] Docket 53 at 3-4; Docket 65 at 3.

[9] Docket 53 at 7-8; Docket 65 at 4; Docket 65-3 at 3.

[10] Docket 53 at 8; Docket 65 at 4.

[11] Docket 65-2 at 3; Docket 65-3 at 2-3.

[12] Docket 65-2 at 3; Docket 65-3 at 3.

[13] Docket 53 at 8-9; Docket 65 at 5; Docket 65-2 at 3; Docket 65-3 at 3.

[14] Docket 53 at 9; Docket 65 at 5.

[15] Docket 53 at 9 (quoting Docket 65-6 at 42:05–42:13 (recording filed conventionally)).

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 3 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 3 of 16

Defendant and asked for the combination.[16] Defendant again provided the combination and agents opened the safe where they recovered a loaded stolen Zastava rifle and a Savage Arms rifle.[17] After agents recovered the firearms, Officer Piscoya again approached Defendant and questioned him.[18]

On January 21, 2025, a grand jury returned a one-count indictment against Defendant charging him with possessing the three firearms knowing that he had previously been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8).[19] The indictment also contained a criminal forfeiture allegation.[20]

Dispositive motions in this case were due November 24, 2025.[21] During trial preparation, defense counsel "discovered that certain alleged inculpatory statements attributed to Mr. Severance—particularly recorded statements concerning a safe combination—were missing from discovery."[22] On January 16, 2026, the Government was made aware of a recording of the patrol car backseat video in which Defendant is asked by both Agent Crump and Agent Ziesemer for

---

[16] Docket 53 at 9; Docket 65 at 5.

[17] Docket 53 at 9; Docket 65 at 5; Docket 65-2 at 3.

[18] Docket 53 at 9-10; Docket 65 at 5-6; Docket 65-5 at 2.

[19] Docket 2 at 1-2.

[20] Docket 2 at 2.

[21] Docket 42.

[22] Docket 53 at 10.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 4 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 4 of 16

the gun safe combination; the Government provided the video to defense counsel.[23] On January 20, 2026, Defendant filed a motion to suppress.[24]

After briefing on Defendant's Motion to Suppress was complete, the Court scheduled an evidentiary hearing to provide the Government with an "opportunity to present evidence at that hearing in support of its assertion that 'ATF and the SRT unit were prepared to break into any room, safe, car, etc., that was authorized by the federal search warrant.'"[25]

The Court held the hearing on February 9, 2026.[26] At the hearing, Agent Crump testified. He testified that he is a special agent with ATF and has worked at ATF for approximately 17 years. He testified that, on any search warrant that ATF executes, agents bring a battering ram and a Halligan tool to assist agents in gaining entry into a building or container. Agent Crump testified that a Halligan tool is a tool used to pry something open, such as an exterior door of a residence or a gun safe door. An agent wedges the Halligan tool in between the door and the door frame and then uses the battering ram to set the Halligan tool so that the Halligan tool is used to pry the door open. If agents are unable to open a door

---

[23] Docket 65 at 8.

[24] Docket 53.

[25] Docket 69 (quoting Docket 65 at 5).

[26] Docket 73.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 5 of 16

using that method, Agent Crump testified that he would utilize a locksmith to open the locking mechanism and that he has used a locksmith in the past.

Agent Crump testified as to his standard practice when attempting to open a gun safe. Agent Crump testified that he first attempts to ask the resident or owner of the gun safe for the combination or a key to prevent having to damage the safe. Only if the resident refuses to provide the combination or key, Agent Crump testified that he would try to open the safe with the battering ram and Halligan tool and, if that failed, he would call a locksmith or use a chop saw or other cutting tool to gain access to the safe.

Regarding the execution of the search warrant at issue in this case, Agent Crump testified that the agents brought multiple battering rams and Halligan tools to the Irwin Street properties, as well as bolt cutters and some other specialized tools. He also testified that before executing the search warrant, he had contacted a local locksmith and had the locksmith's name and number on standby in the event he needed a locksmith's assistance to open any locked containers.

## LEGAL STANDARDS

### I. Fifth Amendment and *Miranda*

The Fifth Amendment "protects a person . . . against being incriminated by [their] own compelled testimonial communications."[27] This prohibition not only

---

[27] *Fisher v. United States*, 425 U.S. 391, 409 (1976); *see also* U.S. Const. amend. V. ("No person . . . shall be compelled in any criminal case to be a witness against himself."); *United States v. Saechao*, 418 F.3d 1073, 1077 (9th Cir. 2005) ("As a general rule, the Fifth Amendment

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 6 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 6 of 16

allows a person "to refuse to testify against himself at a criminal trial in which [they] are] a defendant, but also 'privileges [them] not to answer official questions put to [them] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [them] in future criminal proceedings.'"[28] "In *Miranda v. Arizona*, the Supreme Court adopted prophylactic procedural measures to guarantee that a suspect is advised of [their] Fifth Amendment rights before custodial interrogations."[29] "[T]hese measures protect the individual against the coercive nature of custodial interrogation[.]"[30] A failure to advise an individual of their *Miranda* rights during a custodial interrogation "affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements" made during the interrogation.[31]

Because "the *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause," that Clause "is not implicated by the admission into evidence of the physical fruit of a voluntary statement."[32] The

---

speaks of compulsion[.]" (internal quotation marks and citation omitted)).

[28] *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

[29] *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966)).

[30] *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011).

[31] *Oregon v. Elstad*, 470 U.S. 298, 306 n.1 (1985); *see also id.* at 307 (noting that this presumption is "irrebuttable for purposes of the prosecution's case in chief").

[32] *United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality).

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 7 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 7 of 16

government bears the burden of establishing that statements made in violation of *Miranda* were nevertheless voluntary.[33]

## II. Independent Source Doctrine

"[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source."[34] "[T]he independent source doctrine asks whether the evidence actually was 'obtained independently from activities untainted by the initial illegality.'"[35] It is a defendant's initial burden to show specific evidence demonstrating an unconstitutional taint; "[t]he burden then shifts to the government to show that it acquired its evidence from an independent source."[36]

## III. Inevitable Discovery Doctrine

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source."[37] For the inevitable discovery exception to apply, the prosecution must "establish by a preponderance of the evidence that the information ultimately or inevitably would

---

[33] *United States v. Haswood,* 350 F.3d 1024, 1027 (9th Cir. 2003).

[34] *Utah v. Strieff*, 579 U.S. 232, 238 (2016).

[35] *United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)).

[36] *United States v. Cella*, 568 F.2d 1266, 1284-85 (9th Cir. 1977).

[37] *Strieff*, 579 U.S. at 238 (citing *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)).

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 8 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 8 of 16

have been discovered by lawful means."[38] "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment."[39]

## DISCUSSION

### I. Timeliness

As an initial matter, the Government maintains that this Court should deny Defendant's Motion to Suppress because it was untimely.[40] While the "Government acknowledges that a video of Severance in the backseat of an APD patrol car was discovered late," the Government contends that the video did not "contain any 'new' information" but "[r]ather, it supported the written reports by Special Agents Crump and Ziesemer."[41]

The Court will not deny Defendant's Motion to Suppress on timeliness grounds. While Defendant did not seek an extension of the deadline to file a motion to suppress, discovery was ongoing with new evidence—the patrol car video—not disclosed to Defendant until several weeks after the pretrial motions deadline. The Court disagrees with the Government that the video is substantially the same as the agents' reports that had been disclosed previously to Defendant.

---

[38] *Nix*, 467 U.S. at 444.

[39] *Id.* at 444 n.5.

[40] Docket 65 at 7-10.

[41] Docket 65 at 9.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 9 of 16
Case 3:25-cr-00006-SLG-MMS    Document 88    Filed 03/04/26    Page 9 of 16

A video recording of a custodial interrogation provides important context as to the timing and circumstances of the interrogation and the demeanor of the officers and the suspect. The written reports by Agents Crump and Ziesemer capture only the rudimentary facts that they asked Defendant for the combination to the gun safe. Therefore, the Court will consider Defendant's Motion to Suppress on the merits.

II. Merits

A. Statements

Defendant first contends that all statements made by Defendant after he invoked his right to remain silent must be suppressed.[42] The Government agrees that Defendant invoked his right to remain silent and the statements he made after that invocation at his initial interrogation cannot be used by the Government in its case-in-chief.[43] The Government also indicates that it does not intend to use the statements that Defendant made in the patrol car regarding the safe combination in its case-in-chief.[44]

The Court agrees that Defendant explicitly invoked his right to remain silent and therefore any continued questioning by the agents violated Defendant's Fifth Amendment rights. As such, Defendant's motion to suppress is granted as to all

---

[42] Docket 53 at 11-14.

[43] Docket 65 at 10.

[44] Docket 65 at 10.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 10 of 16
Case 3:25-cr-00006-SLG-MMS    Document 88    Filed 03/04/26    Page 10 of 16

statements Defendant made after he invoked his right to remain silent, including all statements made by him in the patrol car.

### B. Physical Evidence

#### i. Voluntariness of Statements

If a statement is obtained in violation of *Miranda*, and that statement then leads to additional evidence, the derivative evidence—or "fruit"—is generally not excluded by the fruit-of-the-poisonous-tree doctrine.[45] But the government may not introduce evidence that is the fruit of involuntary statements.[46]

Defendant contends that, in addition to the statements he made after invoking his Fifth Amendment right to remain silent, the guns seized from the gun safe must also be suppressed "as fruits of a compelled testimonial disclosure obtained in violation of the Fifth Amendment."[47] Defendant maintains that his statements providing the gun safe combination were "involuntary" because he was "detained, handcuffed, confined in a locked patrol vehicle, and subjected to repeated police-initiated questioning after he had unequivocally invoked his right to remain silent."[48] Further, Defendant "remained in continuous custody, was not

---

[45] *Patane*, 542 U.S. at 644 (plurality opinion in which the majority agreed that there is generally no fruit-of-the-poisonous-tree doctrine for *Miranda* violations).

[46] *See Moore v. Czerniak*, 574 F.3d 1092, 1120 (9th Cir. 2009) ("The fruits of involuntary confessions—including those that are extracted with promises of leniency—may not be admitted at trial."); *Patane*, 542 U.S. at 644 ("[T]he Court requires the exclusion of the physical fruit of actually coerced statements.").

[47] Docket 53 at 16.

[48] Docket 53 at 17.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 11 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 11 of 16

free to leave, and was questioned multiple times about the same incriminating subject matter despite his clear refusal to answer questions."[49] He also contends that his statement providing the combination to Agent Crump was coercive because afterwards Agent Crump said "I'm gonna, just to let you know, talk to you here shortly and then we will see about getting you out of here, what we are going to do. Alright?"[50] In Defendant's view, this statement by Agent Crump "reasonably conveyed that Mr. Severance's continued detention—or potential release—was contingent on his cooperation."[51]

As noted above, the Government bears the burden to show that statements made in violation of *Miranda* were nonetheless voluntary.[52] The Government has not argued that Defendant's statements made after he invoked his right to remain silent were voluntary and the Government did not put forth any evidence on that question.[53] Therefore, the Court finds that the physical fruits of Defendant's statements must be suppressed unless an exception to the exclusionary rule applies.

---

[49] Docket 53 at 17.

[50] Docket 53 at 9 (quoting Docket 65-6 at 42:05–42:13 (recording filed conventionally)).

[51] Docket 53 at 17.

[52] *Haswood*, 350 F.3d at 1027.

[53] *See generally* Docket 65; Docket 75; *see also* Docket 74 at 2 ("[T]he government has not produced evidence that the statement was voluntary.").

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 12 of 16

### ii. Independent Source Doctrine

The Government appears to maintain that the two rifles in the safe would have been discovered regardless of the *Miranda* violation because, "independent of the *Miranda* violation," the guns would have been recovered pursuant to "the valid search warrant for the home Severance stayed at, which was signed by Magistrate Judge Matthew Scoble at least <u>eight days before</u> any *Miranda* violation took place."[54]

Evidence that would otherwise be subject to the exclusionary rule may nevertheless be admissible if it was also obtained through a lawful "independent source."[55] "[T]he independent source doctrine asks whether the evidence *actually* was 'obtained independently from activities untainted by the initial illegality.'"[56] Here, the search warrant could have provided a lawful independent source for the recovery of the guns if Mr. Severance had not provided the safe combination. However, the Government's argument that the guns could have been legally obtained from an independent source is not the correct test for the independent source doctrine. The guns must have actually been obtained through the independent source. Because the guns were not "actually . . . obtained

---

[54] Docket 75 at 5 (emphasis in original).

[55] *See Murray v. United States*, 487 U.S. 533 (1988).

[56] *United States v. Lundin*, 817 F.3d 1151, 1161 (9th Cir. 2016) (emphasis added) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)).

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 13 of 16
Case 3:25-cr-00006-SLG-MMS   Document 88   Filed 03/04/26   Page 13 of 16

independently" from the agents questioning of Defendant to elicit the safe combination, the independent source doctrine does not apply.[57]

### iii. Inevitable Discovery Doctrine

Defendant argued in his motion to suppress that the inevitable discovery exception does not apply because "the record contains no evidence that law enforcement was actively pursuing any lawful means of accessing the basement gun safe independent of Mr. Severance's statements."[58] In its response to Defendant's motion, the Government does not explicitly invoke the inevitable discovery doctrine; rather, the Government maintains that the exclusion of the guns recovered from the safe is not required because "[t]he gun safe and the rifles were not 'fruits' of a *Miranda* violation, but rather evidence of violation of Title 18 included by the search warrant," such that "the exclusionary rule does not apply."[59]

---

[57] Docket 65-3 at 3 ("S/A Crump had obtained a combination from Cody SEVERANCE for a gun safe in the back basement bedroom labeled Room 4. SACH Ziesemer attempted this combination, and it did not open the safe. SACH Ziesemer then asked Cody SEVERANCE (who had previously been Mirandized by DEA TFO Piscoya) if the safe combination was correct. Cody SEVERANCE said to try 36-81-5. Other investigators opened the safe using this combination.").

[58] Docket 53 at 18. In his supplemental brief, Defendant acknowledges that the "Ninth Circuit has held that the government may satisfy its burden by establishing that, by following routine procedures, law enforcement would inevitably have uncovered the evidence." Docket 74 at 6 (first citing *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989); and then citing *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (holding inevitable discovery applied where "routine booking procedure and inventory would have inevitably resulted in discovery of the cocaine")).

[59] Docket 65 at 15. For support of this proposition, the Government first cites *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007). In that case, the Ninth Circuit was presented with the question of whether evidence seized after an individual consented to a search of his car was "fruits" of an earlier Fourth Amendment violation. The Government also cites to *United States v. Redlightning*, 624 F.3d 1090, 1102 (9th Cir. 2010). In that case, the Ninth Circuit considered whether a subsequent confession was the fruit of an earlier unconstitutionally obtained confession; the Ninth Circuit did not reach that question as it held that the first confession was not

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 14 of 16
Case 3:25-cr-00006-SLG-MMS    Document 88    Filed 03/04/26    Page 14 of 16

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source."[60] For the inevitable discovery exception to apply, the prosecution must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means."[61]

Agent Crump's testimony at the evidentiary hearing established by a preponderance of the evidence that agents would have inevitably discovered the guns in the safe even without Defendant providing the combination because they had a valid search warrant for the entire residence, including the safe, the agents brought with them tools to use to break into the safe without the combination and, in the event that failed, were prepared to call a locksmith to open the safe. Therefore, the inevitable discovery doctrine applies to the physical fruits of Defendant's statements and the guns in the safe need not be suppressed under the exclusionary rule.

Defendant also maintains that the search of the gun safe in the basement exceeded the scope of the search warrant because "[t]he supporting affidavit discussed gun safes in the residence and attributed those safes to Sergio

---

obtained in violation of the Constitution because the defendant was not in custody. *Redlightning*, 624 F.3d at 1103-06. The applicability of these cases is not apparent to the Court, and the Government does not explain how these cases apply here.

[60] *Strieff*, 579 U.S. at 238 (citing *Nix*, 467 U.S. at 443-44).

[61] *Nix*, 467 U.S. at 444.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 15 of 16
Case 3:25-cr-00006-SLG-MMS    Document 88    Filed 03/04/26    Page 15 of 16

Severance, describing them as located in a small bedroom adjoining his main bedroom."[62] The search warrant authorized a search of "[a]ll rooms, attics, basements, and other parts therein . . . ."[63] Therefore, the search of the basement and any containers found therein that could contain evidence of the gun offenses identified in the warrant was expressly within the scope of the search warrant. As such, the guns will not be suppressed on that basis.

## CONCLUSION

In light of the foregoing, Defendant's Motion to Suppress at Docket 53 is GRANTED in part and DENIED in part.

The Motion is GRANTED in part as to Defendant's statements made after he invoked his right to remain silent. Those statements shall be SUPPRESSED and the Government shall not use the statements in its case-in-chief.

The Motion is DENIED in part as to the physical fruits of Defendant's statements—the guns from the gun safe. The guns need not be excluded pursuant to the exclusionary rule because the inevitable discovery doctrine applies.

DATED this 4th day of March, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[62] Docket 53 at 19.

[63] Docket 66-1 (SEALED) at 5.

Case No. 3:25-cr-00006-SLG-MMS, *United States v. Severance*
Order on Motion to Suppress
Page 16 of 16
Case 3:25-cr-00006-SLG-MMS    Document 88    Filed 03/04/26    Page 16 of 16